IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VANESSA BENAVIDEZ;
and STELLA PADILLA,

      Plaintiffs,

vs.                                                                  No. 17-CV-00966 WJ-LF

NATALIE HOWARD; Albuquerque City Clerk;
JESSICA HERNANDEZ, City Attorney;
WILLIAM ZARR, Assistant City Attorney; and
NICHOLAS BULLOCK, Assistant City Attorney,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim and Lack of Jurisdiction, filed October 27, 2017 (**Doc. 15**). Having reviewed the parties' pleadings, considered the controlling law and after hearing oral arguments of counsel at the hearing on January 23, 2018, the Court finds that Defendants' motion is well-taken and, therefore, is GRANTED.

**BACKGROUND**

Plaintiff Stella Padilla and her daughter, Plaintiff Vanessa Benavidez, are self-described community activists. Ms. Padilla was a potential candidate in the 2017 Albuquerque mayoral race. *See* Compl., at 1. She became involved in a dispute regarding the required number of petition signatures with Albuquerque City Clerk Natalie Howard, and brought suit in state

district court regarding the matter.[1]  In response to Ms. Benavidez' aggressive efforts to serve Ms. Howard with a copy of the complaint and Ms. Benavidez' conduct toward Ms. Howard on several other occasions, Ms. Howard filed a motion for protective order seeking to protect Ms. Howard from aggressive conduct engaged in by "any person who is a volunteer or otherwise associated with Ms. Padilla's campaign." Doc. 1, Ex. A.  *Id.*[2]

This federal lawsuit is premised on First Amendment rights under the United States Constitution as well as under the New Mexico Constitution.  *See* Compl., Doc. 1 at 4, ¶18.  Plaintiffs contend that the filing of the motion for protective order in the underlying state court action was improper and done in order to silence or chill their right to engage in free speech.  *Id.* at 1-2.  Plaintiffs also contend that Defendants' conduct in seeking the protective order was a "vindictive prosecution" done intentionally and that this conduct violated their First Amendment right to petition the Government for redress.  *Id.,* ¶¶15, 16.  Their federal complaint asserts one cause of action based on a violation of Plaintiffs' First Amendment rights under the United States Constitution as well as the New Mexico Constitution.  *See* Compl., ¶18.  Plaintiffs allege that Defendants had no legitimate basis or cause to file the motion for protective order against them, and that they did so with "retaliatory and malicious" motives.  *Id.,* ¶¶17-18.  In addition to compensatory and punitive damages, Plaintiffs seek declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

---

[1] There is no discussion in the briefs about the underlying state case, however, Ms. Padilla's state court lawsuit was dismissed with prejudice in July 2017.  *See Padilla v. Howard,* Case No. D-202-CV-2017-03556.  At the hearing, counsel for the parties advised the Court that the merits of the state court motion was never fully addressed, since the state district judge granted Defendants' motion to dismiss.  Counsel for the parties also informed the Court that Ms. Padilla tried to obtain a Writ of Superintending Control from the New Mexico Supreme Court but that effort was unsuccessful.  The Court is somewhat perplexed that Ms. Padilla's counsel tried to obtain a Writ of Superintending Control as opposed to a standard appeal to the New Mexico Court of Appeals.

[2] Ms. Benavidez is referred to as "Vanessa Padilla" in the motion for protective order.  *See* Doc. 1-2, ¶¶3-4.  For clarity, the Court will use "Ms. Benavidez" to distinguish the daughter from her mother, Stella Padilla.

Defendants seek dismissal of Plaintiffs' Complaint pursuant to Fed.R.Civ.Pro 12(b)(1) and 12(b)(6) for the following reasons:

(1) Defendants are absolutely immune from the alleged § 1983 claims;

(2) Defendants are entitled to qualified immunity because the allegations fail to show a First Amendment violation and Plaintiffs cannot show that the right they seek to assert was clearly established;

(3) Plaintiffs fail to state a § 1983 damages claim against Jessica Hernandez;

(4) Plaintiffs fail to show that there is subject-matter jurisdiction for their declaratory judgment claims; and

(5) Because there are no federal claims, Plaintiffs' state law claim should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

## DISCUSSION

A 12(b)(1) motion to dismiss for lack of "subject-matter jurisdiction" can attack the sufficiency of a complaint on the grounds that the facts as alleged fail to establish that the court has jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Since federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *Id.* A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.*; Fed.R.Civ.P. 12(h)(3).

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers'*

*Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Plaintiffs allege that Defendants violated their free speech rights under the First Amendment. The free speech rights protected by the First Amendment include the right to petition the government for redress of grievances. *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Governmental retaliation for exercising one's freedom of speech constitutes infringement of that freedom. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). To properly set forth a claim of unlawful retaliation by government officials in response to the exercise of the First Amendment right to petition, Plaintiffs must allege sufficient facts to show that (a) they were engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. 219 F.3d at 1212.

## I. Absolute Immunity from §1983 claims

During the time periods relevant to this lawsuit, Defendant Jessica Hernandez was the City Attorney for the City of Albuquerque. As far as the Court can ascertain from reviewing the scant factual allegations in Plaintiffs' Complaint, the only reason Jessica Hernandez was named

as a Defendant in this case was because her name appeared on the motion for protective order as the City Attorney for the City of Albuquerque.

Plaintiff Stella Padilla had filed the state court lawsuit against Defendant Natalie Howard in her capacity as City Clerk and she was represented by Assistant City Attorneys Zarr and Bullock who are also named defendants in this case. The motion for protective order filed in the state court lawsuit states that the motion was made on behalf of Defendant Natalie Howard, Albuquerque City Clerk, by Defendants Zarr and Bullock, in their capacities as Assistant City Attorneys, and the motion was signed by Defendant Zarr. Doc. 1-2 (Ex. A) at 1 & 6. The motion for protective order was supported by the sworn affidavit of Natalie Howard, who was the defendant in, and a party to, the underlying state court action. Defendants contend that Plaintiffs' §1983 claims must be dismissed for failure to state a claim because Defendants are absolutely immune from suit for their conduct participating in the judicial process. The Court agrees.

Acts "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *McCormick v. City of Lawrence, Kan.*, 99 F. App'x 169, 172 (10th Cir. 2004) (citing *Kalina v. Fletcher,* 522 U.S. 118, 126 (1997) (quotation omitted). Absolute prosecutorial immunity extends no further than necessary to protect those activities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 811 (1982); *see Cordova v. Vaughn Mun. Sch. Dist. Bd. of Educ.*, 3 F. Supp. 2d 1216, 1219–20 (D.N.M. 1998) (absolute immunity applies only for activities that are intimately associated with the judicial process, such as initiating or pursuing a

criminal prosecution or civil action) (citing *Robinson v. Volkswagenwerk AG,* 940 F.2d 1369, 1370 (10th Cir.1991)).[3]

More generally, absolute immunity protects various participants in the judicial process and the United States Supreme Court has held that such immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Jenner v. Brightwell*, No. 14-CV-00916-RBJ-KMT, 2015 WL 1042065, at *5 (D. Colo. Mar. 6, 2015) (citing *Butz v. Economou,* 438 U.S. 478, 512 (1978)). The doctrine of absolute immunity covers conduct in civil proceedings where the government attorney is operating in an enforcement role and advocating for the state "in initiating and prosecuting judicial proceedings." *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000); *Van Deelen v. City of Kan. City, Mo., No. Civ.A. 05–2028*, 2005 WL 3050151, at *8 (D.Kan. Nov. 14, 2005) (citing numerous cases, and recognizing that absolute immunity applies to protect government counsel for their actions in defending civil suits); *see also Juide v. City of Ann Arbor*, 839 F.Supp. 497, 500–504 (E.D.Mich.1993) (city officials entitled to absolute prosecutorial immunity for actions taken in civil forfeiture proceeding).

Absolute immunity is not limited to the criminal context, and applies to civil proceedings "where the government attorney is operating in an enforcement role and advocating for the state 'in initiating and prosecuting judicial proceedings.'" *Jenner*, No. 14-CV-00916-RBJ-KMT, 2015 WL 1042065, at *5. This protection also extends to government counsel for their actions in defending civil suits. *See Van Deelen,* 2005 WL 3050151, at *8. The Tenth Circuit has recognized that absolute immunity applies to government counsel when defending civil suits.

---

[3] *See Jenner v. Brightwell*, 2015 WL 1042065, *5 (D.Colo) (assistant attorney general was entitled to absolute immunity from plaintiffs' retaliation claim to the extent it is premised on her filing a motion to dismiss plaintiff's claims in previous lawsuit) (citing *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000); *see also, e.g., Fry v. Melaragno*, 939 F.2d 832 (9th Cir.1991) (absolute prosecutorial immunity applied to federal government attorney who brought a civil suit for tax deficiencies).

6

*Robinson,* 940 F.2d at 1372-73; *see also Barrett v. U.S.,* 798 F.2d 565, 572 (2d Cir. 1986) (government counsel acting as advocate for public trust "should not be inhibited in the faithful performance of his duties by the threat of harassing lawsuits against him" and was therefore entitled to absolute immunity). Thus, absolute immunity protects government attorneys from a §1983 action for damages based on actions taken in their official capacity in defending against a prior § 1983 suit. *Jenner,* 2015 WL 1042065, at *5; *Murphy v. Morris,* 849 F.2d 1101, 1104–1105 (8th Cir.1988) (finding that assistant attorney general was immune from a § 1983 suit for the introduction of evidence in a prior § 1983 suit). However, a defendant who asserts absolute immunity from § 1983 liability bears the burden of establishing the existence of immunity for the function in question. *Robinson,* 940 F.2d at 1370 ("one claiming such immunity must demonstrate clear entitlement").

Defendants contend that in filing the motion for protective order in the state court lawsuit, Defendants Hernandez, Zarr and Bullock were functioning squarely within their capacity as advocates for a city government defendant in a judicial proceeding. Plaintiffs recognize that absolute immunity is available to government attorneys, but argue that Defendants were not engaging in the particular functions that entitle them to such protection.[4] The Court disagrees.

A. <u>Defendants Hernandez, Zarr and Bullock</u>

In considering whether Defendants Hernandez, Zarr and Bullock are entitled to absolute immunity, the question must be function, rather than position, of these individuals because no absolute immunity is allowed for actions that are administrative, investigative, or otherwise

---

[4] Plaintiffs rely in part on *Van Deelen v. Ramirez* to argue that attorneys who give legal advice and engage in conduct going beyond defense were subject to §1983 litigation. 2001 WL 789275, at *4. However, that case did not address absolute immunity at all, but rather the question of when an attorney becomes a state actor for purposes of §1983.

removed from the judicial process. *Cordova*, 3 F. Supp. 2d at 1219–20 (D.N.M. 1998); *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989) (immunity is "justified and defined by the *functions* it protects and serves, not by the person to whom it attaches" (citing *Forrester v. White,* 484 U.S. 219 (1988) (emphasis in original). To distinguish between actions that are intimately associated with the judicial process and those that are investigative or administrative in nature, the Court looks to whether the actions can rightly be considered advocacy "because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1195 (10th Cir. 2010). Absolute immunity may attach even to administrative or investigative activities "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Id.* (quoting *Snell v. Tunnell,* 920 F.2d 673, 693 (10th Cir.1990)).

Plaintiffs challenge the single action taken by these Defendants in the filing of the motion for protective order, claiming that they did so "without justification and cause" and solely to harass Plaintiffs, in order to prevent the continued criticism of City employees and "to deny Plaintiffs the right to petition their government for redress." Compl., Doc. 1, ¶16.

The filing of a motion as part of defending a civil lawsuit undoubtedly "lies directly at the heart of the judicial process." *See Jenner*, 2015 WL 1042065, at *6. However, the question here is whether the filing of the protective order against Plaintiffs falls into this category, and the Court finds that it does. In determining whether absolute immunity applies, the Court must look to the function performed, and not the person who performed it. *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.,* 191 F.3d 1306, 1314 (10th Cir.1999) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir.1990).

The facts alleged the motion for protective order and the attached affidavit of Ms. Howard describe several occasions where Ms. Howard found herself being hounded by Plaintiff Vanessa Benavidez. These instances allegedly occurred not only when Ms. Benavidez attempted to serve Ms. Howard with a copy of the state court complaint, but on several other occasions as well when Ms. Howard was on her way into the courthouse to attend hearings on the state court lawsuit. On these occasions, Ms. Benavidez allegedly would block Ms. Howard's path into the courthouse, trying to intimidate her. When Ms. Howard told Ms. Benavidez to stop the harassment, Ms. Benavidez replied: "You don't know what harassment is." Doc. 1-2, ¶14. The motion for protective order describes two other occasions when Ms. Benavidez engaged in similar "aggressive behavior . . . during the course of the lawsuit." Doc. 1-2, ¶15. The motion stated that a protective order was sought in order to allow Ms. Howard, as "a party and a witness," the "right to participate in this litigation and to attend the proceedings of …[the State] Court without having to be concerned with encountering or enduring harassing conduct or intimidation by any person associated with the Plaintiff's [Stella Padilla] campaign." Doc. 1-2, ¶24.

One of the themes perpetrated by Plaintiffs in this lawsuit is Defendants' use of Rule 26 in the state court lawsuit as a basis for the protective order at issue. The complaint asserts that:

> Defendants prepared and filed a Motion for Protective Order, inconsistent with NMRA Rule 26, without justification and cause, solely to harass Plaintiffs and prevent the continued criticism of City of Albuquerque employees and to deny Plaintiffs the right to petition their government for redress.

Compl., ¶16. At the hearing, Plaintiffs' counsel insisted that Defendants' use of Rule 26 as a basis for a protective order when there was no ongoing discovery was egregious and indicated an intent to harass Plaintiffs and keep them from redressing the government.

The Court thoroughly agrees with defense counsel's opening comments at the hearing cautioning the Court that Plaintiffs would attempt to misdirect the Court toward the merits of the case rather than the real issues at stake. The Rule 26 issue is just such an example. Whether Rule 26 was the best way to obtain the protective order is incredibly beyond the point of the lawsuit, and the Court illustrates why using the very argument offered by Plaintiffs' counsel. At the hearing, counsel insisted that if Ms. Howard felt besieged by Ms. Benavidez' conduct in front of the state courthouse, there were more appropriate measures she could have taken—such as calling on law enforcement to arrest Ms. Benavidez and noting that there were plenty of law enforcement officers in the vicinity. At the hearing, Plaintiffs' counsel suggested that this federal lawsuit would not have been filed if Defendants had Ms. Benavidez arrested rather than seek a civil protective order under a civil discovery rule. One word comes to mind: disingenuous. The Court finds it simply incredible that Plaintiffs would *not* have viewed criminal consequences even *more* egregious and retaliatory. For these reasons, the Rule 26 issue is nothing more than a red herring.

Another theme brought up at the hearing by Plaintiffs was the scope of relief sought by the motion for protective order.[5] This is yet another red herring because the merits of the protective order that was sought have nothing to do with the questions here in the instant case dealing with absolute immunity, qualified immunity and whether the complaint meets the threshold *Iqbal/Twombly* standard. Whether the motion for protective order was overly broad in

---

[5] The argument presented by Plaintiffs' counsel was based on a rather hyperbolic (and inaccurate) description of the relief sought by Defendants in the motion for protective order. At the hearing, counsel argued that Defendants were seeking to bar Plaintiffs from entering government buildings or from engaging in their constitutional right to protest the government. However, the Court directed counsel's attention to the actual language in that pleading, which had been attached as an exhibit to the complaint. See Doc. 1-2 at 6. The Court noted in particular that Defendants had requested only that the protective order prohibit Plaintiffs "from engaging in conduct *directed at Defendant's person*, which a reasonable person would find to be annoying, alarming, hostile or mincing in nature . . . ." *Id*. (emphasis added). The term "Defendant's person" as used in the motion for protective order obviously refers to Ms. Howard, as she was the only Defendant in the state court lawsuit.

terms of the number of individuals it sought to enjoin, whether the relief went beyond what was necessary to protect Ms. Howard, or even whether the motion should have been filed under a different civil (or criminal) rule has no bearing whatsoever on whether Defendants should be liable for the actual filing of that motion. The Court concludes that in filing the motion for protective order, Defendants Zarr and Bullock were performing a judicial function. They did so as part of their duty in defending City Clerk Natalie Howard against a state court lawsuit which Plaintiff Stella Padilla initiated, and their objective in taking that action was one of advocacy, which earmarks it for the protections of absolute immunity. *Jensen*, 603 F.3d at 1195. The protective order was sought in order to allow Ms. Howard the ability to perform her obligations as both a party and a witness and for Defendants to be able to defend the lawsuit brought by Ms. Padilla, unfettered by conduct which would interfere with that ability and duty. Thus, the filing of the motion for protective order by Defendants Zarr and Bullock belongs in the category of actions that are associated with the judicial process rather than those that are investigative or administrative in nature, and in fact, the Court finds that Plaintiffs' filing of this federal lawsuit is exactly the kind of conduct which is barred by absolute immunity.

As for Defendant Hernendez, as the Court noted the Plaintiffs Complaint is devoid of any factual allegations even remotely alleging how Defendant Hernendez somehow violated Plaintiffs' First Amendment right of free speech. Assuming that Defendant Hernendez was involved with Defendants Zarr and Bullock in the preparation and filing of the motion for protective order, Defendant Hernendez is likewise entitled to absolute immunity for the same reasons the Court has found that apply to Defendants Zarr and Bullock. Therefore, Defendants Hernandez, Zarr and Bullock are entitled to absolute immunity from Plaintiffs' claims.

    B.    <u>Defendant Howard</u>

Witnesses enjoy absolute immunity from civil liability under §1983 for their testimony in a prior trial. *Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir. 2003) (citing *Briscoe v. LaHue,* 460 U.S. 325, 345 (1983) ("immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law"). This immunity applies to witnesses who sign an affidavit as well as to witnesses who present live testimony in the courtroom. *Todd v. Weltman Weinberg & Reis Co., L.P.A.*, 434 F3d 432, 439 (6th Cir. 2006); *Burns v. County of King*, 883 F.2d 819, 823 (9th Cir. 1989)(absolute immunity for witness who signed affidavit used in bail revocation proceeding); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (a witness is absolutely immune from civil liability based on any testimony the witness provides during a judicial proceeding "even if the witness knew the statements were false and made them with malice").

Plaintiffs argue that the *Hunt* case does not apply because Ms. Howard's *testimony* or the fact that she signed an affidavit is not relevant to this case, but rather her conduct in seeking a protective order was "to restrain and curtain Plaintiff's . . . speech." Doc. 22 at 18. The Court finds Plaintiffs' view of this issue to be overly restrictive as well as unfaithful to the allegations in their complaint. Plaintiffs overlook the fact that the Ms. Howard's affidavit *is* relevant to the absolutely immunity inquiry because even though the motion for protective order was not filed by Ms. Howard, it was sought on her behalf and it was her sworn description of the events that transpired—that is, her *testimony*—that formed the basis for the requested protective order. Doc. 1-2. Plaintiffs argue that *Hunt* cannot provide a basis for absolute immunity because they are not suing Ms. Howard for perjured testimony, but this claim strikes the Court as somewhat disingenuous because in order to allege a First Amendment claim, Plaintiffs must allege the existence of an impermissible and underlying motive on Ms. Howard's part that lies separate and

apart from the actual words in her affidavit, which at the very least implies insincerity in those statements. This, Plaintiffs have not done. Therefore, the Court finds that Defendant Howard is also entitled to absolute immunity from Plaintiffs' claims in this lawsuit.

While these findings are sufficient to grant Defendants' motion to dismiss Plaintiffs' complaint, the Court continues to address Defendants' other meritorious arguments as alternative grounds for dismissal of Plaintiffs Complaint.

## II. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. This defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where an individual defendant asserts qualified immunity, the burden shifts and the plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of defendants' alleged misconduct. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010). This same two-part test for qualified immunity applies in the context of a motion to dismiss. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). The Court must determine whether a complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, under the *Iqbal-Twombly* standard. *Shero v. City of Grove*, *Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 560-561 and *Iqbal*, 556 U.S. at 678.

    A.    <u>Whether Defendants are Entitled to Qualified Immunity</u>

Courts have discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.

*Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009). Under the facts of this case, the better approach is to address first whether Plaintiffs have alleged a constitutional violation.

Plaintiffs allege a First Amendment violation, which requires that they allege sufficient facts to show that (a) they were engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell,* 219 F.3d at 1212.

Defendants contend that Plaintiffs were not engaging in constitutionally protected activity when Stella Padilla's daughter Vanessa Benavidez engaged in harassing and intimidating behavior toward Ms. Howard, as described in Ms. Howard's sworn affidavit. Doc. 1-2 at 8-11. The Court also notes that Plaintiffs' allegations in the Complaint do not challenge the factual statements in the affidavit. Plaintiffs claim that Ms. Benavidez was simply lodging complaints as an "unhappy citizen[]" and that she was simply seeking redress for these complaints. Doc. 22 at 22. However, the unrebutted facts set forth in Ms. Howard's affidavit cannot plausibly be viewed as the mere lodging of complaints by an unhappy citizen, but would more easily qualify as harassing or intimidating conduct. Defendants are correct in that there is no First Amendment right to harass or intimidate government officials, and so Ms. Benavidez' conduct as described in Ms. Howard's affidavit does not and cannot constitute protected conduct in a First Amendment analysis. *See McCall v. Intercity Transit,* 2011 WL 2442960, *2 (D.W.D. Wash. 2011) ("verbally aggressive" behavior not protected).

Plaintiffs counter that they engaged in protected activity when they initiated the state court lawsuit. This activity would theoretically pass muster for the first element of a First

Amendment inquiry, but the problem is that the allegations in the Complaint in this lawsuit do not assert the filing of the state court lawsuit as the protected conduct. The Complaint refers instead to Plaintiffs' right to criticize their government and to "petition their government for redress" as the activity in which they were engaged. *See, e.g.* Doc. 1, ¶16.

The Court could go so far as to accept these late representations regarding the filing of the state court lawsuit as the protected activity, but Plaintiffs still fail to assert a viable First Amendment claim. There are no allegations in the Complaint showing that Defendants' actions caused them to suffer an injury that would "chill a person of ordinary firmness from continuing to engage in that activity." *Worrell,* 219 F.3d at 1212. There is no mention anywhere, either in the Complaint or Plaintiffs' Response to the Motion to Dismiss, of any facts relating to a "chilling" effect or describing in any way how Plaintiffs refrained from engaging in any protected activity.

Finally, the facts described in Ms. Howard's affidavit (and which remain unchallenged in their accurateness) offer no suggestion of impermissible motive on the part of Defendants. There is no reason to believe that Defendants' decision to file the motion for protective order was made in response to Plaintiffs' decision to file a state court lawsuit regarding a dispute over the required number of petition signatures. The facts set forth in Ms. Howard's affidavit and the motion for protective order—both of which are attached to the complaint for the Court's consideration—do not state any plausible basis for this element of a First Amendment inquiry.[6] The only available facts leave only one inference: that in filing the motion for protective order, Defendants sought to stop the harassment they experienced during the course of the state court lawsuit.

---

[6] *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (in evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference.

For these reasons, the Court finds that Plaintiffs have not asserted a First Amendment claim under the *Iqbal-Twombly* standard. With this finding, the Court need not determine whether the law was clearly established at the relevant time, and concludes that Defendants are entitled to qualified immunity on the First Amendment claim.

B.  Defendant Hernandez

Defendant Hernandez would also be subject to dismissal for other reasons offered by Defendants. First, other than the mere statement that Ms. Hernandez is the City Attorney for the City of Albuquerque (*see* Compl., ¶4), there are absolutely no allegations referring to Ms. Hernandez in the Complaint. For this reason alone, Ms. Hernandez would be subject to dismissal under the *Iqbal-Twombly* standard. Second, as the City Attorney, Ms. Hernandez is not liable under a *respondeat superior* theory in §1983 claims. *Monell v. Department of Social Serv*., 436 U.S. 658 (1978); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Moreover, individual liability in §1983 claims requires personal involvement in the alleged violation, and Plaintiffs Complaint is completely and totally devoid of any factual allegations stating such involvement by Ms. Hernandez. *See Schneider v. City of Grand Junction Police Dep't*., 717 F.3d 760, 768 (10th Cir. 2013) (individual liability under Section 1983 requires personal involvement in the alleged violation). Thus, Plaintiffs fail to state a claim under Fed.R.12(b)(6) against Ms. Hernandez. Third, Plaintiffs' counsel stated at the hearing that she believed Ms. Hernandez could be liable under §1983 because as the City Attorney, Ms. Hernandez was responsible for setting city policy and as a supervisor. However, the Court has scoured the Complaint but has found no mention of any fact or assertion relating to either a municipal or supervisory liability theory under §1983 and thus, Plaintiffs' counsel's remarks concerning Ms. Hernandez' involvement in this case are nothing more than rank speculation.

### IV. Lack of Subject Matter Jurisdiction

Defendants also contend that Plaintiffs cannot meet their burden under Fed.R.Civ.P. 12(b0(1) to show that they have alleged sufficient facts to establish subject-matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. ¶¶2201 and 2202. The Act contains a case-or-controversy requirement, and does not by itself establish a separate and independent basis for subject matter jurisdiction or establish jurisdiction in federal court where none otherwise exists. *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 822 (10th Cir.1981); *see also Schulke v. United States,* 544 F.2d 453, 455 (10th Cir.1976) ("One seeking relief under the [declaratory judgment] statute must establish a separate and independent basis for jurisdiction").

In the above discussion, the Court has concluded that Plaintiffs have not asserted a First Amendment claim on various grounds, and without such a claim, there is no basis for the declaratory relief they seek. *See* Compl., Doc. 1 at 4, ¶2.

### V. State Constitutional Claims

Plaintiffs assert only one state claim, brought under Art. II, Section 17 of the New Mexico Constitution, which provides for freedom of speech and press. In that claim, Plaintiffs allege that Defendants violated Plaintiffs' rights to freedom of speech and to petition the government for redress.

Defendants ask the Court to decline to exercise supplemental jurisdiction over any and all state law claims under 28 U.S.C. §1367(c)(3) with the dismissal of all of Plaintiffs' federal claims, while Plaintiffs urge the Court to exercise its discretion under §1367(a) to address their state claim. The Court finds that exercising supplemental jurisdiction over Plaintiffs' state law claim is not only more efficient, but it would spare Defendants from having to defend against Plaintiffs' baseless claims yet again in a state forum.

Plaintiffs' state law claim is summarily dismissed. The freedoms of speech and association provided by the First Amendment of the U.S. Constitution are "coextensive with protections provided by the New Mexico Constitution, art. II, §17. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 895 (10th Cir. 2011); *see also Am. Ass'n. of People with Disabilities v. Herrera*, 690 F.Supp.2d 1183, 1224 (D.N.M.2010) (noting that Article II, §17 of the New Mexico Constitution is analogous to the First Amendment of the United States Constitution).

The text of Article II, §17 of the state constitution reads as follows:

Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. . . .

Plaintiffs fail to assert any facts to support a claim that Defendants infringed on the liberty set forth in this text. Defendants would be entitled to absolute immunity and in the alternative, qualified immunity for failure to state a plausible state constitutional claim for the same reasons described in the Court's First Amendment analysis. Accordingly, Plaintiffs' state law claim is dismissed with prejudice as well, both on grounds of immunity as well as under Rule 12(b)(6).

The Court would also add this consideration: Plaintiffs' decision to file this lawsuit is both ironic and unjustified because if there is any infringement of rights that occurred in these circumstances, it would be Plaintiffs' conduct that qualifies as such. All the facts in this case show that Defendants requested a protective order so that they could peaceably defend themselves against Plaintiffs' state court lawsuit and that they had every right to do so. Plaintiffs' conduct in filing this federal action could be viewed as an attempt to retaliate against Defendants for exercising *their* right of access to the courts.

18

**CONCLUSION**

In sum, the Court finds and concludes that all Defendants are entitled to absolute immunity on all of Plaintiffs' federal and state law claims. Alternatively, the Court finds that all Defendants are entitled to qualified immunity on those claims as well, because Plaintiffs have failed to satisfy their burden in a qualified immunity analysis of stating a claim for relief that is plausible on its face under the *Iqbal-Twombly* standard. In addition, Defendant Hernandez is also dismissed on several grounds, including not only that Plaintiffs have not alleged any personal involvement on her part in the alleged unconstitutional conduct which is required for a §1983 claim and indeed, not having alleged any facts at all regarding Ms. Hernandez in the complaint. Finally, having failed to assert a viable federal claim, Plaintiffs have presented no basis for the declaratory relief they seek.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim and Lack of Jurisdiction **(Doc. 15)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE